UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

INTERNATIONAL MEZZO
TECHNOLOGIES, INC.                      CIVIL ACTION

VERSUS                                  NUMBER 10-397-SCR

FRONTLINE AEROSPACE, INC. AND
RYAN WOOD

**OPINION**

The lengthy trial testimony[1] and the numerous exhibits[2] have been carefully reviewed.  The court has also considered the parties proposed findings of fact and conclusions of law.[3]  It is readily apparent from the trial record and the parties submissions that much of the evidence is conflicting, and even when there is no evidentiary conflict, the credibility of the main witnesses and the significance of the evidence is seriously disputed.

This opinion does not attempt to cite every bit or even most of evidence relevant to the determination of each contested issue. It is sufficient to explain that these findings are based on the overall record, after weighing the credibility of the witnesses and considering whether the testimony is supported by other evidence. After having done this, a preponderance of the credible evidence

---

[1] Record document numbers 125 - 127.

[2] See record document number 124.

[3] Record document numbers 129 and 130.

supports the following findings of fact and conclusions of law, which are issued pursuant to Rule 52(a)(1), Fed.R.Civ.P. Based on these findings and conclusions, judgment will be entered in favor of the defendants on the main demand and in favor of the plaintiff on the counterclaim.

## Background

In early 2008, defendant Ryan Wood contacted Kevin Kelly, the owner of plaintiff International Mezzo Technologies, Inc. ("Mezzo"), to discuss a project involving the use of a lightweight heat recuperator with gas turbine engines in light aircraft and helicopters. From approximately January to October 2008, Kelly and Wood corresponded and discussed mutual contractual obligations concerning the project, including non-disclosure agreements and a potential business partnership. During this time, the two also disclosed certain substantive data and logistics of the potential project. On February 3, 2008 the plaintiff provided the defendants with a Design Report and Quotation which contained a preliminary design for a heat recuperator incorporated into a gas turbine engine.

After the Design Report was produced, the defendants allegedly disclosed certain diagrams from the report to the public. Specifically, the diagrams were disclosed by Wood on a video clip for Engineering TV and on the defendant's website. On May 7, 2008 the defendants also filed US Patent Application number 12/116,536,

which subsequently became U.S. Patent No. 7,775,031 (the "'031 Patent"). The '031 Patent described a heat recuperator to be used in conjunction with a gas turbine engine and listed Ryan Wood as the sole inventor. The patent also contained copies of certain drawings provided in the plaintiff's Design Report.

Plaintiff Mezzo filed a complaint in federal court based on diversity jurisdiction under 28 U.S.C.§ 1332.[4] Plaintiff alleged that the defendants misappropriated certain designs and drawings and used them to obtain the '031 Patent. Plaintiff alleged that these actions violated terms of a nondisclosure agreement ("NDA"). Plaintiff sought: (1) relief under Louisiana contract law, (2) relief under the Louisiana Uniform Trade Secrets Act, (3) a declaration finding Kelly is the sole inventor of the'031 Patent, and (4) assignment of the rights to the patent.

In response to the plaintiff's complaint, the defendants filed a counterclaim asserting that the NDA was not properly executed at the time the plaintiff sent the Design Report and Quotation to the defendants. Defendants also argued that they purchased the Design Report, and were therefore free to use the documents without regard to any disclosure limitations in the alleged NDA.

Defendants sought a declaratory judgment finding that: (1) the NDA was never valid and is unenforceable; or (2) the NDA was not valid and enforceable at the time the defendants received the

---

[4] Record document number 1, Original Complaint.

Design Report and Quotation; or, (3) the defendants did not violate the terms of that agreement. Defendants also asserted a counterclaim against the plaintiff based on the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, et seq. ("LUTPA"). Defendants alleged that the plaintiff engaged in unfair trade practices which include: (1) attempting to enforce the NDA through litigation when it knew the NDA was not signed at the time the trade secrets at issue were disclosed; and, (2) back-signing the nondisclosure agreement and falsely representing it was executed on January 10, 2008 and/or January 16, 2008.

## Applicable Law

### Louisiana Uniform Trade Secrets Act

Under the Louisiana Uniform Trade Secrets Act, LSA-R.S. § 51:1431 et seq. '"a complainant must prove (a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation."' *Computer Management Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000), *citing*, *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997). The statute defines a "trade secret" as information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

4

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

LSA-R.S. § 51:1431(4).

"Misappropriation" under statute is defined as:

(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) disclosure or use of a trade secret of another without express or implied consent by a person who:

> (i) used improper means to acquire knowledge of the trade secret; or

> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

>> (aa) derived from or through a person who had utilized improper means to acquire it;

>> (bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

>> (cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

LSA-R.S. § 51:1431(2).

### Louisiana Law of Obligations and Contracts

Numerous Louisiana Civil Code articles on the general law of obligations and contracts are applicable in this case. The

principles set forth in these articles are cited and paraphrased as follows.

Consent requires there be a meeting of the minds of the parties through an offer and acceptance. *Ricky's Diesel Service, Inc. v. Pinell*, 2004-0202 (La.App. 1 Cir. 2/11/05), 906 So.2d 536. Unless the law prescribes a certain formality for the contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. *Lambert v. Don M. Barron Contractor, Inc.*, 42,868 (La.App. 2 Cir. 1/9/08), 974 So. 2d 198, 201, *citing*, Louisiana Civil Code article 1927. A contract is formed when an offeree begins a requested performance, when an offeror invites acceptance by performance, and according to the nature of the contract it is contemplated that the performance will be completed if commenced. Louisiana Civil Code article 1939. In the absence of a legal requirement, if the parties have contemplated a certain form it is presumed that they do not intend to be bound until the contract is executed in that form. Louisiana Civil Code article 1947. When a writing is not required by law, a contract that is not reduced to writing and has a price or value in excess of five hundred dollars, must be proved by at least one witness and other corroborating circumstances. The witness may be the plaintiff and other corroborating circumstances must come from a source other than the person urging the existence of the contract, but need only be

general in nature, without independent proof of every detail of the agreement.  Louisiana Civil Code article 1846; *Biedenharn v. Culp*, 39,680 (La.App. 2 Cir. 8/26/05), 911 So.2d 313, 319.

Upon dissolution of a contract the parties are restored to the situation that existed before the contract was made.  If restoration in kind is impossible or impracticable the court may award damages.  Louisiana Civil Code article 2018.  The obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made.  Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived.  An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform, and if he fails to do so the obligor may demand that the damages be accordingly reduced.  Louisiana Civil Code articles 1995, 1996, and 2002.

**Fraud**

Under Louisiana Civil Code article 1953 fraud is defined as: "[a] misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction."  Fraudulent intent, which is the intent to deceive, is a necessary element of fraud.  *Whitehead v. American Coachworks, Inc.*, 2002-0027 (La.App. 1 Cir. 12/20/02), 837 So.2d 678, 682.  Fraud cannot be based on mistake or negligence, no matter how gross.  *Id.*; Cortes *v. Lynch*, 2002-1498 (La.App. 1 Cir.

5/9/03), 846 So.2d 945, 950.

**Unjust Enrichment**

A cause for unjust enrichment was adopted into Louisiana law under La. Civ.Code art. 2298 which provides as follows:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.

> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

To establish an action for unjust enrichment a plaintiff must prove five elements: (1) enrichment on the part of the defendant, (2) impoverishment on the part of the plaintiff, (3) a causal connection between the defendant's enrichment and the plaintiff's impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) a lack of other remedy at law. *Indus. Cos. v. Durbin*, 1213-14 (La. 2003) 837 So.2d 1207, citing, *Carriere v. Bank of Louisiana*, 95-3058 (La.12/13/96) 702 So.2d 648, 651. "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 2010-0353 (La. 6/4/10)

8

38 So. 3d 243, 244, quoting, *Mouton v. State*, 525 So.2d 1136, 1142 (La.App. 1st Cir.1988).

**Negligent Misrepresentation**

The elements necessary to establish a claim of negligent misrepresentation in Louisiana are: "(1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation." *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008).

**Patent Law and Joint Inventorship**

Under U.S. patent law, the touchstone of inventorship is conception. *University of Pittsburgh of Commonwealth System of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (C.A.Fed. 2009). "'Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is therefore to be applied in practice.'" *Creative Compounds, LLC v. Starmark Laboratories*, 651 F.3d 1303, 1312, (C.A.Fed. 2011), *citing, Singh v. Brake*, 317 F.3d 1334, 1340 (Fed.Cir. 2003). "An idea is sufficiently definite for conception 'when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or

research plan he hopes to pursue.'" *Creative Compounds*, 651 F.3d at 1312, *citing*, *Burroughs Wellcome Co. v. Barr Labs.*, 40 F.3d 1223, 1228 (Fed.Cir. 1994).

When two or more inventors collaborate on an invention jointly 35 U.S.C. § 116 requires a joint patent application. Because an invention is defined by the claims of the patent, a joint inventor can establish his inventorship by showing that he contributed one or more of the claims. *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed.Cir. 1998). A person claiming joint inventorship must also demonstrate that he contributed in some significant manner to the conception of the invention. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed.Cir. 2004); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed.Cir. 1997). However, joint inventors need not (1) physically work together or at the same time, (2) make the same type or amount of contribution, or (3) make a contribution to the subject matter of every claim of the patent. § 116. "Thus, the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue." *Ethicon*, 135 F.3d at 1460.

While a joint inventor needs to perform only a part of the task which produces the invention, a person does not qualify as a joint inventor by merely providing the inventor with well-known principles or explaining the state of the art after the conception

10

of the claimed invention. *Id*. "Moreover, depending on the scope of a patent's claims, one of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor, even if the specification discloses that embodiment to satisfy the best mode requirement." *Id*. Non-joinder of an inventor on a patent, provided the non-joinder error occurred without deceptive intent, can be corrected under 35 U.S.C. § 256 . The statute provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

Under 35 U.S.C. § 282, there is a presumption that a patent is valid and that the named inventors on a patent are the true and only inventors. *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed.Cir.1997). A party seeking a correction of inventorship must meet the heavy burden of proving its case by clear and convincing evidence. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed.Cir. 2004). An inventor's testimony standing alone does not satisfy this burden of broof. *Ethicon,*

11

*Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1461 (Fed.Cir. 1998). The clear and convincing standard is met when the alleged inventor proves their contribution to the conception of the invention with corroborating evidence to their own testimony concerning the relevant facts. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed.Cir. 1993). Corroborating evidence may take such forms as contemporaneous documents and circumstantial evidence. *Ethicon*, 135 F.3d at 1461

Whether testimony is sufficiently corroborated is evaluated under a "rule of reason analysis," which requires making, "[a]n evaluation of all pertinent evidence [] so that a sound determination of the credibility of the inventor's story may be reached." *Price*, 988 F.2d at 1195. See also, *Weaver v. Houchin*, 467 Fed.Appx. 878, 880, (Fed.Cir. 2012). When conducting a rule of reason analysis, the following eight factors are generally considered:

> (1) the relationship between the corroborating witness and the alleged prior user,
>
> (2) the time period between the event and trial,
>
> (3) the interest of the corroborating witness in the subject matter in suit,
>
> (4) contradiction or impeachment of the witness' testimony,
>
> (5) the extent and details of the corroborating testimony,
>
> (6) the witness' familiarity with the subject matter of the patented invention and the prior use,

12

(7) probability that a prior use could occur considering the state of the art at the time,

(8) impact of the invention on the industry, and the commercial value of its practice.

*Lazare Kaplan Intern., Inc. v. Photoscribe Technologies, Inc.*, 628 F.3d 1359, 1374 (Fed.Cir. 2010).

**Louisiana Unfair Trade Practices and Consumer Protection Law**

The Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[5]  LSA-R.S. 51:1405(A).  LUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice...."  *Id*. § 1409(A).  The statute does not enumerate the sorts of conduct that constitutes unfair or deceptive methods, and allows the courts to make this determination on a case by case basis.  *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).  The Fifth Circuit has found these terms to include:

a practice that is unethical, oppressive, unscrupulous, or substantially injurious to consumers; fraud, misrepresentation, deception, but not mere negligence;

_____

[5] This statute is commonly referred to under its previous title, the Louisiana Unfair Trade Practices Act.

13

acts offensive to established public policy and immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; and acts have some element of fraud, misrepresentation, deception or other unethical conduct.

*Reingold v. Swiftships, Inc.*, 126 F.3d 645, 653 (5th Cir. 1997)(internal citations omitted).

However, the statute does not "prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions," nor does it provide an alternate remedy for simple breaches of contract. *Turner*, 989 F.2d at 1422.

## <u>Analysis and Findings of Fact</u>

### No Effective Nondisclosure Agreement

Overall, the credibility of the witnesses for the plaintiffs, particularly Kelly, was less than the credibility of the defendants' witnesses, particularly Wood. The preponderance of the credible evidence established that the plaintiff and the defendants did not enter into a valid NDA.

On January 10, 2008, Kelly emailed a draft NDA to Wood. That document was a previously used version that had not been edited by Kelly and it was not a formal offer. Wood electronically signed the draft NDA on January 10, 2008, sent a copy of it to Kelly via email, and also manually signed a copy and faxed it to Kelly. Kelly did not sign either the emailed version or the faxed version at or around the time the NDA was sent to him by Wood. An email

14

sent by Kelly on March 6, 2008 establishes that he had not executed NDA by that date and that the NDA was still subject to further negotiations.[6]   To the extent that Kelly's signed copy of the NDA constituted an offer to the plaintiff to enter into an NDA, the offer was rejected.

On April 17, 2008, Kelly sent Wood an email with a new copy of the NDA containing his signature and requested that Wood execute this copy.[7]   This constituted a new offer to enter into an NDA. Wood responded via email to Kelly and stated that the negotiations for terms of signing the NDA were still ongoing.[8]   Instead of accepting Kelly's NDA offer, Wood presented a counter-offer asking Kelly to execute Frontline's NDA in exchange for his execution of Mezzo's NDA.[9]   This counter-offer was not accepted by Kelly. Although some correspondence and testimony demonstrated Wood's intention to adhere to the terms of the NDA during this time, the evidence does not establish that the NDA negotiations were completed; there was no final meeting of the minds nor a mutually executed NDA.   As a result, all information disclosed by the plaintiff during this time was not governed by an NDA.

While one copy of the NDA produced by the plaintiff at trial

---

[6] P-29.

[7] D-29.

[8] P-38, D-31.

[9] Id.

contained both Kelly's and Wood's signatures, the date of January 16, 2008 under Kelly's signature block is not credible. The evidence, including Kelly's testimony, supports finding that he did not sign the document on that date and that he back-dated his signature on this copy. Without establishing when this copy was actually signed, the evidence does not support finding that Wood still intended to be bound to the NDA at the time the document was actually executed by Kelly. Without credible evidence demonstrating when the NDA was actually executed by Kelly, the plaintiff cannot establish that the agreement was in effect at the time Wood disclosed the information contained in the Design Report.

**Fraud and Negligent Misrepresentation**

There is insufficient credible evidence to support finding that the defendants committed negligent misrepresentations or any fraudulent act. The lack of an effective NDA between the parties defeats the plaintiff's claims of negligent misrepresentation and contractual fraud under La.Civ.Code art 1953.

**Louisiana Trade Secrets Act Claim**

The preponderance of the credible evidence established that the trade secrets identified by the plaintiff in support of this claim were not misappropriated by the defendants.

In its discovery responses, the plaintiff alleged the following trade secrets were compromised: (1) procedures to

expoxy/braze tubes to headers and midplates,(2) procedures to cut and deburr tubes, (3) best practices to make headers and midplates from different material, (4) heat transfer models based on heat transfer tests of micro tube heat exchangers for a wide variety of cases, (5) best sources of materials, and (6) unique designs associated with micro tubes to reduce stresses in outermost tubes.[10] However, Kelly testified at trial that these trade secrets were not disclosed to the defendants. The evidence supports finding that the defendants' had no knowledge of these trade secrets. Therefore, the plaintiff failed prove its trade secret violation claim based on these alleged trade secrets.

Plaintiff asserted at trial that the recuperator design disclosed in the Design Report was a trade secret that was misappropriated. However, the credible evidence established that the defendant paid the plaintiff $5,000 for the Design Report, and this payment for the report included the right to use the information contained in it. Despite ample opportunity, the plaintiff never amended its discovery responses to identify the recuperator design as a trade secret. Plaintiff's failure to do so until trial supports finding that it did not consider the configuration to be a trade secret at the time it was disclosed to the defendants. Furthermore, publications produced at trial and Dr. Kandilkar's testimony established that a recuperator design

---

[10] D-65.

17

containing microtubes in a corrugated or annular configuration was well known within the scientific community. The combination of these two design characteristics is simply not unique or novel enough to outweigh the inference drawn from the plaintiff's failure to identify the recuperator design as a trade secret from the beginning.

Plaintiff also failed to meet its burden to show that a reasonable effort was made to maintain the secrecy of the recuperator design. Although the Design Report was marked as proprietary and confidential, the plaintiff did not introduce evidence to demonstrate its affirmative efforts to maintain the secrecy of the information contained in the report. As found above, the parties had not entered into a valid NDA at the time the Design Report was produced. The Design Report was produced prior to Kelly's email clearly stating his belief that no NDA was in effect.

Plaintiff did not prove at trial any specifically identified trade secret was disclosed by the defendants. The design of the corrugated wall microtube heat recuperator in an annular configuration found in the plaintiff's Design Report was not a trade secret. Moreover, that disclosure was not protected by an NDA. Plaintiff's claim under the Louisiana Trade Secrets Act fails.

18

**Mezzo's Rights to the '031 Patent**

The invention at issue involves a recuperated gas turbine engine system. The patent includes 16 claims defining this system. Wood is the presumed inventor. Plaintiff did not prove at trial that Wood did not conceive or contribute to all of these claims. Plaintiff cannot establish that Kelly was the sole inventor without invalidating Woods inventorship status as to each of these claim. The credible evidence does not establish that Kelly, or any other Mezzo employee, or any combination of Kelly and another Mezzo employee, conceived of the system alone. The evidence clearly establishes that Wood initiated contact with Kelly to work on a recuperator for the Rolls Royce engine. The email correspondence demonstrates that Wood provided substantive specifications to Kelly concerning the design of the recuperated engine system.[11] Kelly was contacted by Wood to design a recuperator to achieve the specifications. The credible evidence does not negate Wood's contribution to the conception of the invention, i.e. the recuperated engine system, prior to contacting Kelly.

Assuming the plaintiff was assigned the rights to its employee's inventions made in the course and scope of employment, and that those rights were not encumbered by any other obligation, the evidence is insufficient to prove that Kelly was a joint

---

[11] See, e.g., P 14 or P 15.

inventor to the '031 Patent.[12]  Plaintiff failed to sufficiently
corroborate Kelly's testimony and prove that he was a joint
inventor of the '031 Patent.  Although Kelly testified that he used
Mezzo correlations, data bases, experiment results and process to
create the corrugated microtube recuperator discussed in the '031
Patent, this testimony was not corroborated with other evidence,
such as lab journals, experiment notes, test results, etc.,
demonstrating that he contributed to the conception of the
recuperator.  The Design Report issued by Mezzo does not name any
inventor.  Kelly's testimony demonstrates at most that other Mezzo
employees were involved in the recuperator design process,
including Charles Becnel and Jeff McClean.[13]  But without sufficient
evidence to establish which Mezzo employee worked on the
recuperator and to what extent, the plaintiff failed to corroborate
Kelly's testimony and prove by clear and convincing evidence that
he was a joint inventor.

**No Unjust Enrichment**

The findings above, particularly that there was no enforceable
NDA, Mezzo did not reveal any trade secrets to the defendants,

---

[12] Because the plaintiff did not establish that Kelly has any
rights in the '031 Patent, the challenges made by the defendant
concerning Mezzo's and/or Kelly's ownership interest are moot and
require no findings of fact.

[13] Plaintiff also did not set forth sufficient evidence to
establish that these employees were joint inventors of the '031
Patent.  Neither employee testified at trial.

that the defendants paid Mezzo for the information in the Design Report, and Wood is the sole inventor of the '301 Patent, are applicable to the plaintiff's unjust enrichment claim.  Plaintiff failed to prove by a preponderance of the credible evidence the elements of an unjust enrichment claim.  Importantly, the plaintiff failed to prove that it had no other remedy at law since it clearly had - and brought in this case - a breach of contract claim.

**Defendant's Louisiana Unfair Trade Practices Counter-Claim**

Although a very close call, the plaintiff's attempts to enforce the NDA did not rise to the level of an unfair trade practice as defined under Louisiana law.

While the parties never actually agreed to an enforceable NDA, and the correspondence between Kelly and Wood showed that the effects of the proposed NDA were questionable, Mezzo believed that the defendants would treat the design as protected from disclosure. Defendant did not produce sufficient evidence of fraud, misrepresentation, deception or other unethical conduct by Mezzo or by Kelly on its behalf.  Plaintiff's alleged motive behind its efforts to enforce the NDA -- Mezzo's obligations to Triumph -- is insufficient to demonstrate the necessary malfeasance required to prove a claim under LUPTA.[14]

---

[14] Having found that the defendants did not prove a LUTPA violation, there is no need to make findings as to damages sustained by defendants from the alleged violation.

## Conclusions of Law

Plaintiff's breach of contract claim will be dismissed because the plaintiff and defendant did not enter into NDA.  Plaintiff's unjust enrichment claim will be dismissed because the plaintiff failed to prove all of the elements of such claim.  Plaintiff's claim under the Louisiana Trade Secrets act will be dismissed because the plaintiff did not disclose any trade secrets to the defendants.  Plaintiff's patent-based claims will be dismissed because the plaintiff failed to prove that Kelly was not the sole inventor or joint inventor of the claimed invention in the '031 Patent.

Defendants' LUTPA counterclaim will be dismissed because the plaintiff did not engage in an unfair trade practice as a result of its attempt to enforce the supposed NDA agreement.

Judgment will be rendered in favor of the defendants on the main demand, dismissing the plaintiff's claims with prejudice.  Judgment will be entered in favor of the plaintiff on the defendants' counterclaim under LUTPA, dismissing the defendants' counterclaim with prejudice.

Baton Rouge, Louisiana, September 25, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE